IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| ELIZABETH ALLCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 120125 |
| | ) | |
| v. | ) | |
| | ) | |
| LANE COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals the real market exception value of residential property identified as

Account 0621753 (subject property) for the 2011-12 tax year. A telephone trial was held on

Wednesday, August 8, 2012. David E. Carmichael, Attorney at Law, appeared on behalf of

Plaintiff. James St. Clair (St. Clair), real estate broker, testified on behalf of Plaintiff. Bryce

Krehbiel, Property Appraiser III, Lane County Assessment and Taxation, appeared on behalf of

Defendant.

Plaintiff's Exhibit 1, Plaintiff's Rebuttal Exhibit 1, Defendant's Exhibits A through J, and

Defendant's Rebuttal Exhibits A and B were received without objection.

## I.    STATEMENT OF FACTS

The subject property is a single-story, 976 square foot home located on a 5,663[1] square

foot lot in Eugene, Lane County, Oregon. (Ptf's Ex 1 at 2; Def's Ex C.) The subject property's

improvement is a single family house originally built in 1940; however, the effective year built is

1992. (Ptf's Ex 1 at 2; Def's Ex C.) The house has two bedrooms, one bathroom, and a

detached single-car garage. (Ptf's Ex 1 at 2; Def's Ex C.)

---

[1] Defendant's Exhibit A lists the area of the subject property as 0.1531 acres (6,669 square feet). The area of the subject lot is not relevant to the outcome of this case.

Plaintiff purchased the subject property for $99,700 on August 12, 2009 in "as is" condition. (Ptf's Ex 1 at 6.) At the time of purchase, the property was in "decrepit condition" and was "non-financeable." (Def's Ex G.) Plaintiff financed the rehabilitation of the subject property with a "203K Rehabilitation Loan" from Bank of America (Bank). (Ptf's Ex 1 at 1.) Pursuant to that loan, the Bank "disbursed funds to contractors on a monthly basis." (Ptf's Ltr at 1, July 26, 2012.) From November 20, 2009 to July 15, 2010, Plaintiff spent a total of $100,257 improving the subject property. (Ptf's Ex 1 at 1.)

St. Clair testified that $55,517 of the total $100,257 Plaintiff spent improving the subject property was attributable to general ongoing maintenance and repair. (Ptf's Ltr at 1, July 26, 2012.) Plaintiff alleges that $27,909 of that total was attributable to general ongoing maintenance and repairs during calendar year 2011. (Ptf's Rebut Ex 1.) St. Clair testified that the amount spent on ongoing maintenance and repair included the costs of masonry, siding materials, roofing materials, paint, caulking, grading work, plaster, wood floors, finished floors, appliances, termite damage repair, clean-up, and miscellaneous items. (Ptf's Ex 1 at 1; Ptf's Rebut Ex 1 at 1.) Plaintiff alleges that the remaining $44,740 of the total $100,257 spent constitutes new construction. (Ptf's Ltr at 1, July 26, 2012.) Plaintiff alleges that the total amounts spent on ongoing construction and repairs and on new construction span the 2010-11 tax year and 2011-12 tax year. (*Id.*)

On February 2, 2010, the Board of Property Tax Appeals (BOPTA) reduced the real market value of the improvements to the subject property from $95,440 to $5,000 for the 2009-10 tax year. (Def's Ex F.) Plaintiff alleges that the county assessor added $41,720 in exception value to the subject property's 2010-11 tax roll, which Plaintiff did not timely appeal

to BOPTA. (Ptf's Ltr at 1, July 26, 2012.) Plaintiff alleges that the county assessor added an additional $68,419 in exception value to the subject property's 2011-12 tax roll. (*Id*.)

Plaintiff filed a petition to appeal the subject property's real market exception value of $68,419 to BOPTA. (Ptf's Compl at 2.) *Id.*) On February 15, 2012, BOPTA sustained the $68,419 real market exception value. (*Id.*)

Plaintiff alleges that the real market exception value for the 2011-12 tax year should be no more than $20,000. (Ptf's Compl at 1.) Defendant requests the court sustain the BOPTA ordered real market exception value of $68,419 for the 2011-12 tax year. Defendant alleges that the total real market exception value is rehabilitation and renovation costs that were properly added as exception value to the 2011-12 tax roll. (Def's Ans at 1.)

## II.     ANALYSIS

The issue before the court is the subject property's real market exception value as of the assessment date January 1, 2011. The Tax Court has previously explained:

> "The term 'exception value' is a creature of Measure 50 (Article XI, section 11 of the Oregon Constitution). It is not found in either the Constitution or statutes, but is a shorthand expression for the occasions triggering a calculation of the [maximum assessed value] for an account under an exception to the calculation rule of ORS 308.146(1)."

*Douglas County Assessor v. Ralph L. Crawford*, TC No 5076, WL 3204674 at *1(Aug 7, 2012).

Under ORS 308.146(1)[2], a property's maximum assessed value is calculated as "103 percent of the property's assessed value from the prior year or 100 percent of the property's maximum assessed value from the prior year, whichever is greater." The property's assessed value equals the lesser of the property's maximum assessed value or its real market value for the applicable tax year. ORS 308.146(1),(2).

---

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2011 unless otherwise noted.

ORS 308.153 provides the method for calculating the maximum assessed value of property that includes new property or improvements. ORS 308.153(1) states in pertinent part:

"(1) If new property is added to the assessment roll or improvements are made to property as of January 1 of the assessment year, the maximum assessed value of the property shall be the sum of:

"(a) The maximum assessed value determined under ORS 308.146 (Determination of maximum assessed value and assessed value); and

"(b) The product of the value of the new property or new improvements determined under subsection (2)(a) of this section multiplied by the ratio, not greater than 1.00, of the average maximum assessed value over the average real market value for the assessment year."

ORS 348.149(5)(a) defines "[n]ew property or new improvements" as changes in value of property as the result of new construction, reconstruction, major additions, remodeling, renovation, or rehabilitation. "New property or new improvements" does not include changes in the value of the property from general ongoing maintenance and repair. ORS 348.149(5)(b).

The Department of Revenue promulgated OAR 150-308.149-(A) to further clarify what constitutes "new property or new improvements" and "general ongoing maintenance and repair." OAR 150-308.149-(A) states in pertinent part:

"(1) For purposes of ORS 308.149:

"(a) 'New construction' means any new structure, building, addition or improvement to the land, including site development.

"* * * * *.

"(e) 'Renovation' means the process by which older structures or historic buildings are modernized, remodeled or restored.

"(f) 'Rehabilitation' means to restore to a former condition without changing the basic plan, form or style of the structure.

"(2)(a) For purposes of ORS 308.149 'general ongoing maintenance and repair' means activity that:

"(A) Preserves the condition of existing improvements without significantly changing design or materials and achieves an average useful life that is typical of the type and quality so the property continues to perform and function efficiently;

"(B) Does not create new structures, additions to existing real property improvements or replacement of real or personal property machinery and equipment;

"(C) Does not affect a sufficient portion of the improvements to qualify as new construction, reconstruction, major additions, remodeling, renovation or rehabilitation; and

"* * * * *.

"(b) Regardless of cost, the value of general ongoing maintenance and repairs may not be included as additions for the calculation of maximum assessed value."

The first task is to determine whether the improvements Plaintiff made to the subject property during the 2011-12 tax year were "general ongoing maintenance and repairs" or "renovations." Plaintiff alleges that $55,517 of the total $100,257 spent on improving the house during 2010-11 and 2011-12 was for ongoing maintenance and repairs. (Ptf's Ex 1 at 1.) Plaintiff categorized the alleged maintenance and repair expenses as follows: $14,000 on masonry, $2,700 on siding materials, $4,590 on roofing materials, $3,528 on paint, $300 on caulking, $450 on grading work, $3,900 on plaster, $1,260 on wood floors, $4,151 on finished floors, $4,373 on appliances, $7,908 termite damage repair, $2,000 on clean-up, and $6,357 on miscellaneous items. (Ptf's Ex 1 at 1; Ptf's Rebut Ex 1 at 1.)

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's real market value is incorrect on the tax roll. ORS 305.427. Plaintiff must establish her claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.,* TC No 4530 at 4 (July 12, 2001) (citing *Feves v. Dept. of Revenue,* 4 OTR 302 (1971)).

DECISION TC-MD 120125 5

Plaintiff did not substantiate her alleged maintenance and repair expenses with receipts. Plaintiff submitted various invoices, dated 2009 and 2010. (Ptf's Ex 1 at 9-20.) Those invoices were not referenced to the "Accounting 203K Rehabilitation Funds" worksheet. (Ptf's Ex 1 at 1.) It is apparent that the few invoices submitted as evidence do not substantiate all the costs listed on the worksheet.

Plaintiff asks the court to accept her allocation of expenditures between years with no supporting documentation. In addition, Plaintiff asks the court to accept her characterization of the expenditures as maintenance and repair or renovation/rehabilitation. Plaintiff did not testify. Given the subject property's condition ("decrepit" and "non-financeable") as of the Plaintiff's purchase date, it is unclear to the court whether the activities, such as painting, grading, roofing, and adding hardwood floors, which Plaintiff alleges were ongoing maintenance and repairs, affected "a sufficient portion of the improvements to qualify as new construction, * * * renovation, or rehabilitation, * * * ." OAR 150-308.149(A)(2)(a)(C). There is insufficient evidence for the court to accept Plaintiff's allocation.

Even if the court were to accept Plaintiff's allocation and characterization of the expenditure between tax years, the next "critical task for the court is to determine how much the RMV [real market value] increased as a result of the improvements." *Hoxie v. Dept. of Rev*., 15 OTR 322, 326 (2001). Plaintiff alleges that the increase in real market value is no more than the expenditure. "Obviously a myriad of factors can affect the RMV of property * * * The exception value is limited to the RMV attributable to the new improvements." *Id*. Plaintiff offered no evidence of real market value. She asked the court to agree with her conclusion that cost equals real market value, but offered no evidence in support of her conclusion that cost equals real market value.

Plaintiff's evidence in support of her requested real market exception value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has failed to carry her burden of proof.

Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. After reviewing the evidence and testimony provided, the court concludes that the court lacks sufficient evidence to determine the real market value attributable to the 2011-12 improvements and to make a determination as to the portion of the expenditures that were for renovation/rehabilitation or general ongoing maintenance and repairs.

Because Plaintiff failed to meet her burden of proof, and the court lacks sufficient evidence to make its own determination of real market value, the court accepts the Board of Property Tax Appeals Order stating that the subject property's real market exception value is $68,419 for the 2011-12 tax year.

III.  CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry her burden of proof. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of October 2012.

_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on October 15, 2012. The Court filed and entered this document on October 15, 2012.*